UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN F. TAYLOR,

    Plaintiff,                                   Civil Action No. 11-13896

v.                                            HON. JOHN CORBETT O'MEARA
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff John F. Taylor brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff is proceeding *pro se*. For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #19] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #18] be DENIED.

## PROCEDURAL HISTORY

On August 24, 2007, Plaintiff filed an application for DIB, alleging a disability onset date of May 31, 2001 (Tr. 165). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on February 16, 2010 in Dallas, Texas before Administrative Law Judge (ALJ) Walter Orr (Tr. 23). Plaintiff, represented by attorney Gregory Frye,

---

[1] Plaintiff's May 15, 2012 letter to the Court is construed as a motion for summary judgment. *Docket #18.*

testified by video conference (Tr. 29-51), as did Vocational Expert ("VE") Tammie Donaldson (Tr. 51-57). On June 30, 2010, ALJ Orr found Plaintiff not disabled as of the expiration of DIB benefits on December 31, 2006 (Tr. 18). On July 6, 2011, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on September 7, 2011.

## BACKGROUND FACTS

Plaintiff, born August 28, 1956, was 53 when the ALJ issued the decision (Tr. 18, 165). He completed 12th grade and worked previously as an inventory specialist at a paper mill (Tr. 196, 199). He alleges disability as a result of spinal and shoulder injuries (Tr. 195).

### A. Plaintiff's Testimony

Plaintiff, divorced, testified that he lived in a single family home (Tr. 30). He reported that he had not worked since 2001 due to a 1994 back injury (Tr. 31). He stated that he worked as a "trimmer operator," also referred to as a machine operator, in his former position at a paper mill (Tr. 31). He reported that from 1995 until 2001, he had been restricted to exertionally light work² (Tr. 31). Plaintiff testified that he received Workers' Compensation benefits from 1995 until 2005 (Tr. 32).

Plaintiff testified that he stood 5' 11" and weighed 200 pounds (Tr. 33). He reported

---

² 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

that since the expiration of his DIB benefits on December 31, 2006, he had lost approximately 100 pounds (Tr. 33). He stated that he was right-handed, had completed high school, and did not experience problems reading, writing, or performing simple calculations (Tr. 33).

Plaintiff reported that back stiffness created problems twisting and bending, denying the ability to crouch, stoop, or kneel without arm support (Tr. 34). He estimated that before the expiration of his insurance, he was unable to sit for more than 30 minutes, stand for more than 10 minutes, or walk for more than one block (Tr. 41-42). He denied the ability to lift more than 15 pounds (Tr. 43). He stated that his current condition was consistent with 2006 levels of limitation except that his shoulder problems had worsened (Tr. 36). He reported constant shoulder and back pain predating the expiration of insurance (Tr. 39). Plaintiff denied problems getting dressed, grooming himself, or making simple meals, but stated that he was unable to vacuum or perform laundry or yard chores (Tr. 44-45). He reported that he was able to drive several times each week and grocery shop (Tr. 45). He denied significant sleep disturbances in the period predating the expiration of benefits, but reported that his back condition required him to recline for approximately two hours every day (Tr. 46).

Aside from back and shoulder problems, Plaintiff testified that he had been diagnosed with lung problems in August, 2009 (Tr. 33). He reported that the condition caused shortness of breath and "generalized weakness" (Tr. 40). He indicated that he had been prescribed an antibiotic for an extended period to address the condition (Tr. 40).

In response to questioning by the ALJ, Plaintiff testified that although he was disabled as of 2001, he refrained from applying for benefits until 2007 because he was receiving Workers' Compensation until 2005, and from 2005 to 2007 he received payments for

participating in a government sponsored retraining program (Tr. 50).

### B. Medical Evidence

#### 1. Treating Sources[3]

In August, 1995, Plaintiff was diagnosed with L5 radiculopathy (Tr. 232). September, 1995 treating records indicate that Plaintiff experienced severe back and leg pain after sustaining a March, 1995 workplace accident (Tr. 235, 252). Plaintiff sought emergency treatment in September, 1995 for acute low back pain (Tr. 248). A CT of the lumbar spine showed a disc herniation with nerve root impingement at S1 (Tr. 271). The same imaging study also showed mild bulging at L3/4 and a herniation at L4/5 (Tr. 270). Plaintiff underwent a diskectomy at L4-5 without complications (Tr. 258-259).

June, 2009 treating notes state that Plaintiff had been recently hospitalized secondary to neuropathy as a result of alcoholism (Tr. 297). August, 2009 notes reference a recent diagnosis of the lung condition Mycobacterium Avium Complex ("MAC") (Tr. 295). He denied problems breathing and stated that he was unwilling to quit smoking (Tr. 293, 295). He was urged to pursue antimicrobial therapy through state-subsidized health services (Tr. 295).

In September, 2009, Plaintiff was prescribed Motrin, Neurontin, and Tylenol p.m. for pain relief (Tr. 304). Imaging studies showed evidence of a right rotator cuff injury (Tr. 299). Studies of the left shoulder showed only degenerative changes (Tr. 299). The same month, outpatient physical therapy notes showed decreased strength, range of motion limitations, and increased pain in both shoulders (Tr. 303). Plaintiff reported the onset of the

---

[3]Medical records created prior to the alleged onset of disability are summarized for background purposes only (Tr. 230-277).

shoulder condition in 2007 (Tr. 303). Plaintiff was discharged from physical therapy in November, 2009 for failing to show for two consecutive appointments (Tr. 301). He expressed disinterest in undergoing surgery, but was open to receiving steroid injections (Tr. 293). In January, 2010, Plaintiff told Cara Glavin, M.D. that he experienced significant improvement in shoulder pain after undergoing November, 2009 steroid injections (Tr. 290). Plaintiff reported that he continued to experience level "four" (on a scale of one to ten) pain but experienced an improved range of motion sufficient to participate in rehabilitation (Tr. 291). Dr. Glavin noted that Plaintiff was sitting comfortably on the examination table (Tr. 290). Plaintiff indicated that he continued to smoke (Tr. 290).

### 2. Non-Treating Sources

In December, 2007 Jared Griffith, D.O. performed a consultive examination on behalf of the SSA (Tr. 281). Plaintiff reported that he was unable to stand, sit, or walk for more than 10 minutes (Tr. 278). He also indicated that he experienced right shoulder "grind[ing]" (Tr. 278). He was unable to lift his arms above his head (Tr. 278). Dr. Griffith observed that Plaintiff demonstrated 5/5 strength in all extremities with the exception of the bilateral triceps which were measured at 4/5 (Tr. 279). Plaintiff was able to get on and off the examination table without difficulty (Tr. 279). He exhibited mild difficulty in heel-toe walking and moderate difficulty squatting (Tr. 279). Strength in the trapezius muscles was measured at 4/5 (Tr. 279). Plaintiff's range of shoulder motion was noted to be "marked[ly] decreased" (Tr. 280). He demonstrated normal grip strength and dexterity (Tr. 280).

The same month, James X. Kelly performed a non-examining Residual Functional Capacity Assessment of the treating and consultive records, finding that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and stand, sit, or walk for six hours in an

eight-hour workday (Tr. 283). Plaintiff was limited to occasional climbing, stooping, kneeling crouching, and crawling, and frequent balancing (Tr. 284). He was limited to occasional reaching in all directions (Tr. 285). Kelly found that Plaintiff should avoid concentrated exposure to temperature extremes, wetness, humidity, noise, vibration, hazards, and airborne pollutants (Tr. 286). Kelly concluded that Plaintiff's allegations of disability were not supported by the medical evidence (Tr. 287).

### C.     Vocational Expert Testimony

VE Tammie Donaldson classified Plaintiff's past relevant work as a trim operator as exertionally medium with Specific Vocational Preparation ("SVP") of 3 and warehouse inventory work as sedentary (as performed) with an SVP of 4 (Tr. 53-54).

In response to suggestions by Plaintiff's attorney that the inventory clerk position, (assigned following Plaintiff's back injury) was "accommodated" work, the VE acknowledged that inventory clerks positions generally required the employee to be "up and around"[4] (Tr. 56). Noting that Plaintiff performed the inventory clerk position from 1995 to 2001, the VE opined that she had never encountered a situation in which an individual performed accommodated work for as long as six years (Tr. 56).

### D.     The ALJ's Decision

Citing Plaintiff's treating records, ALJ Orr found that Plaintiff experienced the severe impairments of back and shoulder pain, but found that neither impairment met or equaled a listed impairment under 20 CF.R. Part 404, Subpart P, Appendix 1 (Tr. 13-15). He found that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally

---

[4]Accommodated work, that is, work modified to adjust to the individual's physical or mental limitations, may not qualify as substantial gainful activity for the purposes of determining past relevant work. 20 C.F.R. § 404.1573(c).

-6-

light work "except occasional posturals and occasional overhead reaching" (Tr. 15). The ALJ found that Plaintiff could perform his past relevant work as an inventory clerk as previously performed (Tr. 18).

The ALJ noted that Plaintiff's allegations of physical limitations were not strongly supported by either objective medical testing or treating opinion (Tr. 17). He cited Dr. Galvin's observation that Plaintiff's condition had improved after receiving injections (Tr. 18). He also noted that Plaintiff demonstrated an increased range of motion and improved sleep hygiene (Tr. 18).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Substantial Evidence Supports the ALJ's Decision

Plaintiff requests a remand on the basis that his physical problems render him disabled. *Docket #18,* pg. 1 of 5.

The pleadings of a *pro se* litigant are to be liberally construed. *See Martin v. Overton,* 391 F.3d 710, 712 (6th Cir.2004), citing *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison,* 203 F.3d 410, 414 (6th Cir.2000) (*pro se*

pleadings are held to "an especially liberal standard"). Further, in Social Security cases, the failure to submit a brief or a full blown legal argument "[is] not a prerequisite to the Court's reaching a decision on the merits" or a finding, *sua sponte,* that grounds exist for reversal. *See Wright v. Commissioner of Social Sec. WL* 5420990, *2 -3 (E.D.Mich.2010)(Friedman, J.).

     In the present case, the ALJ's findings, both substantively and procedural adequate, do not provide a basis for remand. Admittedly, Plaintiff has provided recent medical records documenting shoulder and respiratory problems. However, the ALJ's determination that evidence referencing Plaintiff's condition *before* the December 31, 2006 expiration of benefits did not support a disability finding is well supported by the record. The ALJ acknowledged Dr. Griffith's finding of a decreased range of lumbar spine and shoulder motion by restricting Plaintiff to exertionally light work and limiting postural activities (climbing, stooping, kneeling, crouching, crawling, balancing) and overhead reaching to one-third of the workday[5] (Tr. 14-15). Although the VE's testimony was fairly brief, the Step Four finding did not require the ALJ to elicit job findings or other testimony from the VE. *See Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987); *Mays v. Barnhart,* 78 Fed. Appx. 808, 813–814 (3rd Cir.2003) ("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ").

     The ALJ cited Dr. Glavin's January, 2010 findings that shoulder problems had been largely resolved with steroid injections (Tr. 18). The ALJ noted that the treating records as a whole undermined Plaintiff's allegations of disability. Despite Plaintiff's claims that he

---

[5]Although the RFC restricts only Plaintiff's overhead reaching, the VE testified that the job of inventory clerk, as performed, did not require more than occasional reaching in *any* direction (Tr. 54).

-9-

was unable to sit for significant periods, Dr. Glavin observed that he was able to sit comfortably on a table for the course of his examination (Tr. 290). In November, 2009, he was discharged from physical therapy for two consecutive "no-shows" (Tr. 301). Although the basis of his disability claim is based in large part on shoulder problems, he expressed no interest in pursuing shoulder surgery (Tr. 293). While the ALJ acknowledged shoulder problems at Step Two of his analysis and again in the RFC, substantial evidence supports the conclusion that Plaintiff did not experience significant shoulder problems until after the expiration of benefits in December, 2006. Plaintiff told a physical therapist that he did not experience shoulder problems until 2007 (Tr. 303). Despite a MAC diagnosis, Plaintiff continued to smoke up to three packs of cigarettes each day (Tr. 290, 293, 295).

In recommending that the Commissioner's determination be upheld, I have also concluded that Plaintiff's work between 1995 and 2001 as an inventory clerk qualified as substantial gainful activity and not accommodated work. First, the fact that his former duties as a inventory clerk differed from the way the job is performed in the national economy (as noted by the VE) does not invalidate the Step Four finding. At Step Four, the Commissioner considers whether the claimant has the RFC to perform the functional demands and duties of a past job *as actually performed by the claimant.* SSR 82–61; *see also Johnson v. Commissioner of Social Sec.,* 2011 WL 5553823, *6 (E.D.Mich. 2011). If so, the claimant is not disabled. *Id.* If not, the Commissioner *then* considers whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Id.* Thus, if a claimant has the RFC to work at his or her past job as actually performed (even if that particular job is less demanding than the work as generally performed or even if it involves fewer hours or greater opportunity for rest), he or she will be found not disabled at step four. *Stephens v. Shalala,* 50 F.3d 538, 542

(8th Cir.1995).

Second, although Plaintiff's counsel noted the discrepancies between the duties of an inventory clerk as described by the *Dictionary of Occupational Titles* ("DOT") and Plaintiff's description of his own work duties, the ALJ's finding that the position qualified as substantial gainful activity is well supported (Tr. 55-56). The inventory clerk position, as performed by Plaintiff, does not comport with the regulatory definition of accommodated work. 20 C.F.R. § 404.1573(c) lists examples of "accommodated" work:

> [The individual] (1) received "special assistance from other employees in performing [his/her] work" (2) was permitted "to work irregular hours or take frequent rest periods" (3) was "provided with special equipment or [was] assigned work especially suited to [the] impairment (4) was able to work "only because of specially arranged circumstances ..."; (5) "work[ed] at a lower standard of productivity or efficiency than other employees; or (6) "was given the opportunity to work despite ... impairment[s] because of family relationship, past association with [the] employer, or [the] employer's concern for [his/her] welfare."

Although Plaintiff was assigned the position after sustaining a back injury, his description of his work duty does not include any of the above characteristics of accommodated activity. Moreover, as pointed out by the VE, the fact that Plaintiff performed the inventory clerk position on a continuous basis for six years undermines the theory that the work was accommated (Tr. 56); *see Sharkey v. Commissioner, Social Sec. Admin.,* 2008 WL 3289267, *6 (D.Idaho 2008)("longevity of the work experience and pay history are sufficient evidence" to show substantial gainful activity). Accordingly, I find no error in the ALJ's Step Four determination.

### B. Plaintiff Has Not Provided Grounds for a Sentence Six Remand

Plaintiff has also asked the Court to consider February, 2012 treating records showing the presence of "full thickness tendon tears" of the right shoulder. *Docket #18* at 2 of 5.

Material submitted to the Appeals Council subsequent to the administrative decision

is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96. Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

Even assuming that Plaintiff can show good cause for his failure to provide timely evidence of shoulder problems, this evidence, created in the first two months of 2012, does not suggest that Plaintiff experienced the tendon tears prior to the June, 2010 administrative decision. Thus, these records are unlikely to change the ALJ's findings, much less provide illumination into whether Plaintiff was disabled on or before December 31, 2006. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988). Further, assuming that Plaintiff would argue that the imaging studies referenced in the February, 2012 records provided insight into his earlier condition, the transcript evidence strongly suggests that Plaintiff did not experience significant shoulder problems before the end of 2006. While he testified at the hearing that he experienced some level of shoulder problems prior to the expiration of benefits, he acknowledged that the shoulder condition had notably worsened since that time (Tr. 36). His claim that he experienced shoulder problems prior to the end of 2006 is also undermined by his September, 2009 statement to a physical therapist that he had experienced shoulder problems for only two years (Tr. 303). According to his own account,

he did not experience the condition until September, 2007 - well after the expiration of benefits.  Finally, while Plaintiff continued to receive Workers' Compensation benefits until 2005, the transcript contains a dearth of treatment records created between 1995 and 2009.  If Plaintiff had experienced disability level shoulder problems prior to the end of 2006, it is doubtful that he would not have sought medical attention for the condition on at least one occasion in the relevant time period.

In closing, I note that the recommendation to uphold the Commissioner's decision is not intended to trivialize Plaintiff's current limitations.  However, the determination that he was not disabled as of December 31, 2006 falls within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Doc. # 19] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #18] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Date: November 13, 2012

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on November 13, 2012.

| | |
|---|---|
| John Franklin Taylor<br>1468 Gail CT<br>Ypsilanti, MI 48198-6507 | s/Johnetta M. Curry-Williams<br>Case Manager |